## INDEPENDENT CONTRACTOR AGREEMENT
### (Company Operator)

THIS INDEPENDENT CONTRACTOR AGREEMENT ("Agreement") is hereby entered into, effective as of the date set forth below, by and between COAL CITY COB COMPANY, INC. ("CARRIER"), an Illinois Corporation, and sequoia powell global transport llc ("INDEPENDENT CONTRACTOR"), which parties hereby covenant and agree as follows:

WHEREAS, CARRIER is a motor carrier operating pursuant to authority issued by various state and/or federal agencies; and

WHEREAS, INDEPENDENT CONTRACTOR is a Q corporation☐ partnership O LLCd Other _____, who is duly organized/incorporated and existing under the laws of the State of TEXAS _____, and the owner or lessee of certain tractor and/or trailer equipment who desires to perform transportation services and provide equipment for the CARRIER and its customers.

NOW THEREFORE, in consideration of the promises, covenants, representations, and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.  Definitions. For the purposes of this Agreement, the following terms shall have the meanings set forth:

(a) "Carrier Representatives" shall mean any officer, director, shareholder, employee, agent, partner, parent corporation, subsidiary, attorney, lender, insurer, affiliate, representative, successor, and assignee of the CARRIER.

(b) "Contracted Operator(s)" shall mean an independent operator or owner-operator with whom the INDEPENDENT CONTRACTOR has a contract or agreement for the performance of transportation services on behalf of the INDEPENDENT CONTRACTOR.

(c) "DOT" shall mean the United States Department of Transportation.

(d) "Equipment" shall mean the tractor(s), trailer(s) and other transportation equipment listed in Appendix "A" attached hereto, which Appendix may be amended from time to time.

(e) "Income Withholding Order" shall mean any order, writ, or notice issued by a court or government agency of competent jurisdiction requiring the CARRIER to withhold income from any income or revenues due to an employee of the INDEPENDENT CONTRACTOR hereunder in connection with the payment, collection, or enforcement of any child support, spousal support, alimony, or other family support.

(f) "Motor Carrier Laws" shall mean the (1) Federal Motor Carrier Act and the rules and regulations of the Federal Motor Carrier Safety Administration, including 49 C.F.R. Parts 382, 383, 391, 392 and 395; (2) Motor Carrier Act of 1980; (3) rules and regulations of DOT; (4) the rules and regulations of the Interstate Commerce Commission; and (5) Interstate Commerce Commission Termination Act of 1995, together with any and all successor or replacement legislation enacted with respect to such laws, statures, rules and regulations.

2.  Provision of Services and Equipment. During the Term (as set forth in Paragraph 2 below) of this Agreement, INDEPENDENT CONTRACTOR hereby agrees to perform and provide to CARRIER the following services and equipment:

(a) Services. INDEPENDENT CONTRACTOR hereby agrees to provide and perform transportation, freight, and other related services to CARRIER for the benefit of CARRIER and its customers. INDEPENDENT CONTRACTOR has the right to accept or refuse any transportation service assignments requested by the CARRIER. INDEPENDENT CONTRACTOR represents and warrants that INDEPENDENT CONTRACTOR has title to or is authorized to contract the Equipment and services to CARRIER. It is acknowledged that this Agreement does not require the assignment of any particular load, run or trip to any described vehicle, nor does this Agreement commit CARRIER to the use of any described vehicle if it does not desire or require its use. INDEPENDENT CONTRACTOR understands and agrees that it is responsible for its load and for the route selection, loading, and delivery of such load to and unloading at its destination.

(b) Customer Payments. INDEPENDENT CONTRACTOR shall immediately deliver to CARRIER any and all sums of cash, checks, and merchandise which INDEPENDENT CONTRACTOR or its drivers and Contracted Operators receive pursuant to C.O.D.

Exhibit 1

deliveries or otherwise. Such sums or instruments shall be delivered to CARRIER in the form received by the INDEPENDENT CONTRACTOR.

(c) *Equipment*. INDEPENDENT CONTRACTOR further agrees to provide for the use of the Equipment. The parties agree in the event of any addition, substitution, or decrease of any Equipment to be provided by INDEPENDENT CONTRACTOR under this Agreement, the parties shall amend Appendix "A" to provide for the listing and identification of such added, substituted, or deleted Equipment. INDEPENDENT CONTRACTOR hereby warrants and represents that the Equipment:

> (1) INDEPENDENT CONTRACTOR is the owner or lessee of the Equipment and holds any and all licenses, permits, and registrations required to operate the Equipment in interstate commerce for the purposes contemplated by this Agreement;

> (2) The Equipment is in compliance with any and all local, state and federal laws, statutes, ordinances, rules, and regulations required to operate the Equipment and to perfume the Services contracted for hereunder; and

> (3) The Equipment is mechanically sound and INDEPENDENT CONTRACTOR is not aware of any defects or conditions that would affect the rendering or safety of any Services to be performed under this Agreement.

If the signatory to this Agreement will be anyone other than the beneficial owner of the Equipment, the INDEPENDENT CONTRACTOR agrees to provide such necessary Power(s) of Attorney as CARRIER may require.

(d) *Use of Equipment.* The parties agree to be bound by all Motor Carrier Laws applicable to operations hereunder. CARRIER agrees that the Equipment shall be operated only by the INDEPENDENT CONTRACTOR, or its drivers and Contracted Operators, agents, or employees. INDEPENDENT CONTRACTOR agrees that said Equipment will be operated in compliance with all applicable Federal, State, and local laws and the rules and regulations of any regulatory body having jurisdiction. INDEPENDENT CONTRACTOR shall require its drivers and Contracted Operators to carry a copy of this Agreement in the Equipment at all times and file with CARRIER, on a timely basis, all log sheets, physical examination certificates, accident reports, and any other required data, documents, or reports.

(e) *Leased Equipment*. In the event that the Equipment or any portion thereof is the subject of a lease/purchase agreement (the "Lease-Purchase Agreement") between CARRIER and INDEPENDENT CONTRACTOR, the parties hereby acknowledge and agree that (1) the terms of the Lease-Purchase Agreement shall control and govern the relationship between the parties relating to such Equipment and (2) in the event of any conflict in the provision of this Agreement and the Leas-Purchase Agreement, the terms of the Lease-Purchase Agreement shall control.

(f) *Carrier's Equipment*. In the course of performing the services, the parties acknowledge that it may be necessary for INDEPENDDENT CONTRACTOR to use tank trailers, cargo trailers, and other equipment owned by the CARRIER (the "Carrier Equipment"). In connection with the use of such Carrier Equipment, INDEPENDENT CONTRACTOR hereby agrees as follows:

> (1) *Use*. INDEPENDENT CONTRACTOR agrees to use the Carrier Equipment in a careful and competent manner. INDEPENDENT CONTRACTOR further agrees to keep the Equipment in clean appearance and identified as described herein, at its sole cost and expense, and to return such equipment to the possession of CARRIER upon termination of this Agreement, or upon demand of CARRIER, in the same condition as received, less ordinary wear and tear, at the terminal the INDEPENDENT CONTRACTOR is domiciled or as otherwise directed by CARRIER.

> (2) *Trailer Damage*. INDEPENDENT CONTRACTOR shall be liable for the first two thousand dollars ($2000.00) damage or loss to Carrier's Equipment while in possession or control of the INDEPENDENT CONTRACTOR, its agents or employees, due to theft, abuse, negligence or accident. Provided, however, any loss or damage to Carrier's Equipment which is a result of gross negligence on the part of INDEPENDENT CONTRACTOR, its agents or employees, shall be the complete and total responsibility of the INDEPENDENT CONTRACTOR up to maximum of ten thousand dollars ($10,000.00) per occurrence. INDEPENDENT CONTRACTOR AGREES TO PAY CARRIER THE FULL VALUE OF THE COST OF REPAIRING OR REPLACING SUCH CARRIER'S EQUIPMENT UP TO A MAXIMUM OF TEN THOUSAND DOLLARS ($10,000.00) AS REQUIRED BY CARRIER AND SHALL INDEMNIFY AND HOLD CARRIER HARMLESS FOR ANY LIABILITY RESULTING FROM SUCH DAMAGE.

> (3) *Tank Washes*. CARRIER will each pay one hundred percent (100%) of all tank wash charges for Carrier's Equipment cleaned at an approved CARRIER tank wash facility, listed in Appendix B. Should these facilities be changed, the

parties agree that a new Appendix B will be supplied to the INDEPENDENT CONTRACTOR by CARRIER. INDEPENDENT CONTRACTOR agrees that, under no circumstances, will it use or utilize a tank cleaning facility that has not been approved by the applicable local, state and federal governmental agencies. INDEPENDENT CONTRACTOR agrees to pay one hundred percent (100%) of all tank wash charges incurred at any third-party tank wash facility not listed in Appendix B, attributable to loads which INDEPENDENT CONTRACTOR is transporting under this Agreement.

(4) *Product Disposal*. INDEPENDENT CONTRACTOR herby agrees to insure that all product is unloaded at the consignee's facility. Unless the retention of product in a trailer in excess of three (3) gallons is specifically authorized and approved by CARRIER or CARRIER's agent, INDEPENDENT CONTRACTOR agrees to pay one hundred percent (100%) of all charges assessed by ANY tank wash facility, as a result of disposing of product in all instances where the amount of product in the tank exceeds three (3) gallons.

(5) *Return of Equipment and/or Other Property of Carrier*. INDEPENDENT CONTRACTOR hereby covenants and agrees that while this Agreement is in effect, and upon termination of this Agreement, INDEPENDENT CONTRACTOR will return all of Carrier's equipment, including CARRIER'S trailers to the possession of CARRIER at the terminal facility at which INDEPENDENT CONTRACTOR has been assigned or as otherwise directed by CARRIER at INDEPENDENT CONTRACTOR'S sole cost and expense. INDEPENDENT CONTRACTOR acknowledges and agrees that CARRIER'S business requires a careful allocation of equipment among CARRIER'S facilities in the United States and hereby covenants and agrees that if directed to do so by the CARRIER at the termination of any dispatch or upon termination of this Agreement, and returned the same to the CARRIER'S facility from which the original dispatch occurred or to a location otherwise directed by CARRIER. In addition, in the event that INDEPENDENT CONTRACTOR fails or refuses to return any Carrier's Equipment or to pick up an empty trailer as directed by CARRIER, INDEPENDENT CONTRACTOR shall be liable for all costs and expenses incurred by CARRIER, including all legal fees and other out of pocket expenses paid by CARRIER in obtaining a return of such equipment. The provisions of Section 5(e) related to chargeback of expenses shall also apply to the obligations created under this paragraph. INDEPENDENT CONTRACTOR further agrees to remove the placard, decal, lettering, designs, etc., immediately upon the return of the Equipment to him by CARRIER, and CARRIER may withhold payment pending proof of conformation of such removal. Additionally, INDEPENDENT CONTRACTOR shall pay CARRIER twenty-five dollars ($25.00) a day for INDEPENDENT CONTRACTORS failure to return any of CARRIERS property.

(g) *Inspections*. INDEPENDENT CONTRACTOR agrees that prior to the commencement of this Agreement, it will make the subject Equipment available to CARRIER at CARRIER's nearest place of business or to a third party designated by CARRIER to inspect the same to ensure compliance with said rules and regulations. Attached as Appendix C is a Systemic/Annual Inspection Form which shall be completed for each piece of Equipment under this Agreement at the time such Equipment becomes subject to this Agreement, and such form shall be completed bimonthly thereafter during the term of this Agreement. In the event of a failure to comply with this Section, then and in that event this Agreement shall be null and void and CARRIER shall have no liability to INDEPENDENT CONTRACTOR. Any costs or fees charged or connected with said inspections shall be the responsibility of the INDEPENDENT CONTRACTOR.

(h) *Drivers and Contracted Operators*. In hiring drivers and Contracted Operators to operate said Equipment on behalf of INDEPENDENT CONTRACTOR, INDEPENDENT CONTRACTOR agrees to retain, hire, and/or contract with only competent and experienced drivers who meet all of the requirements of DOT and the Motor Carrier Laws, including, but not limited to, familiarity and compliance with state and federal motor carrier safety laws and regulations. INDEPENDENT CONTRACTOR acknowledges and agrees that it has all responsibility for the payment of wages, compensation, payroll taxes, benefits, and all other amounts to said drivers and Contracted Operators and shall indemnify and hold CARRIER harmless for any such claims. In addition, INDEPENDENT CONTRACTOR, expressly acknowledges and agrees that, in the performance of its obligations under this agreement, it will utilize only those drivers and Contracted Operators who at all times satisfy all of the CARRIER'S qualifications and standards enacted from time to time by CARRIER and that it will at all times cause its drivers and Contracted Operators to comply with CARRIER'S policies and procedures in the performance of INDEPENDENT CONTRACTOR'S obligations under this Agreement. The parties agree that, in addition to any other right, remedy or claim CARRIER may have, INDEPENDENT CONTRACTOR shall pay CARRIER twenty five dollars ($25.00) per day for each day that INDEPENDENT CONTRACTOR or INDEPENDENT CONTRACTOR's driver or Contracted Operator is in substantial non-compliance with this Agreement or any terms and conditions of any agreement which may have been entered into by CARRIER with Carrier's customers for which INDEPENDENT CONTRACTOR is performing the transportation services. CARRIER reserves the right to disqualify any operator of the Equipment that does not meet the qualification standards set

forth by CARRIER or the Motor Carrier Laws, in which case INDEPENDENT CONTRACTOR is obligated to provide another fully qualified and licensed operator to operate the Equipment at its sole expense.

(i)   *Accident Reports*.  INDEPENDENT CONTRACTOR shall immediately report any accident to CARRIER involving operations under this Agreement, including INDEPENDENT CONTRACTOR's written report of such accident In the event INDEPENDENT CONTRACTOR fails to immediately notify CARRIER of the accident, but in no instance shall the time of notification exceed four (4) hours from the time of the accident, INDEPENDENT CONTRACTOR shall be liable for any and all damages resulting from that failure to notify, including but not limited to consequential damages, fines, claims by third parties and reasonable attorney fees.

(j)   *Bills of Lading*.  It is agreed that, in connection with any Services performed hereunder, any the bills of lading, way bills, freight bills, manifests or other papers identifying the products or cargo transported on or in the Equipment shall be in such from as approved by the CARRIER.

(k)   *Hours of Service Rules*. INDEPENDENT CONTRACTOR will ensure that its drivers and Contracted Operators comply fully with the hours of service rules and prepare, carry on board, and produce upon request accurate daily logs, all in accordance with the Motor Carrier Laws of the various jurisdictions in which they are operating.

(l)   *Subcontracting/Trip-Leasing*. INDEPENDENT CONTRACTOR is not prohibited from the pickup, transportation, or delivery of property for more than one common carrier or any other person or entity, provided, that INDEPENDENT CONTRACTOR complies with the trip lease requirements under 49 C.F.R. § 376.12(c)(2) and this Agreement. INDEPENDENT CONTRACTOR may trip-lease (subcontract) the Equipment to a third party other than an affiliate of CARRIER only upon receiving prior written authorization from CARRIER and only as allowed for under the federal leasing regulations (49 C.F.R. §376.12(c)(2)]. CARRIER assumes no responsibility for the collection of freight charges or payment to INDEPENDENT CONTRACTOR of any trip-lease related revenue. During the term of any trip-lease, INDEPENDENT CONTRACTOR will display only the trip-lease carrier's identification, and, as between INDEPENDENT CONTRACTOR and CARRIER, CARRIER will have no responsibility for, and INDEPENDENT CONTRACTOR will fully indemnify CARRIER regarding, the operation of the Equipment.

3.   **Carrier's Responsibilities**.  CARRIER shall have the following duties and responsibilities:

(a)   *Operating-Authority*. CARRIER shall be responsible for maintaining the proper operating authority and certificates, as mandated by the Motor Carrier Laws or the appropriate state regulatory bodies.

(b)   *Exclusive Possession and Responsibility*. The Equipment shall be for CARRIER's exclusive possession, control, and use for the duration of this Agreement.  CARRIER shall assume complete responsibility for the operation of the Equipment, as required by the Motor Carrier Laws.  This subparagraph is set forth solely to conform with Motor Carrier Laws on regulations and shall not be used for any other purposes, including any attempt to classify INDEPENDENT CONTRACTOR as an employee of CARRIER; nor does this provision alter the INDEPENDENT CONTRACTOR's freedom to choose the methods and means of how it will perform the perform the transportation Services offered to it by CARRIER. Nothing in the provisions required by 49 C.F.R. § 376.12(c)(1) is intended as evidence that INDEPENDENT CONTRACTOR or any worker provided by INDEPENDENT CONTRACTOR is an employee of CARRIER.  During the term of this Agreement, CARRIER will have the exclusive right to subcontract the Equipment to other authorized motor carriers. INDEPENDENT CONTRACTOR may only subcontract the Equipment only upon meeting the following conditions: (1) INDEPENDENT CONTRACTOR shall receive prior written authorization from CARRIER as set forth in Section 2(l) above, (2) during the performance of such subcontracted services, INDEPENDENT CONTRACTOR shall remove all plates, permits, signage, and identification of CARRIER, and (3) INDEPENDENT CONTRACTOR's subcontracted services  shall be under a separate operating authority independent of CARRIER's authority. CARRIER has no right to and will not control the manner nor prescribe the method of doing that portion of the operation which is contracted for in this Agreement by INDEPENDENT CONTRACTOR, except such control as can reasonably be construed to be required by Applicable Law. INDEPENDENT CONTRACTOR reserves the right to accept or reject any freight tendered for transportation by CARRIER.

(c)   *Inspection of Equipment*. CARRIER agrees that before taking possession of the Equipment, the Equipment will be inspected by one of its responsible and qualified employees or agents.

(d)   *Identification of Equipment*. CARRIER shall identify the Equipment in accordance with the requirements of the Interstate Commerce Commission, Department of Transportation, and appropriate state regulatory agencies.  CARRIER shall have the right to place and maintain on the Equipment Carrier's name and any lettering, advertisement, slogans or designs as

CARRIER may choose. INDEPENDENT CONTRACTOR shall remove such identification at the termination of this Agreement or while operating such Equipment for any purpose other than conducting Carrier's business.

4.  **Duration of Agreement**.  This Agreement shall begin on the date indicated on the signature page and shall remain in effect for a period of not less than thirty (30) days from that date, but then may be terminated in accordance with the provisions of Section 13; provided, however, that this Agreement may be terminated at any time in accordance with the provisions of Section 12.

5.  **Compensation**. The CARRIER and INDEPENDENT CONTRACTOR  hereby agree that the INDEPENDENT CONTRACTOR shall be compensated for the performance of the Services in accordance with the following provisions:

(a) *General*. It is expressly understood and agreed that INDEPENDENT CONTRACTOR's compensation shall be as set forth in Appendix "D" and such compensation shall constitute the total compensation for everything furnished, provided, or done by INDEPENDENT CONTRACTOR in connection with this Agreement, including driver's and Contracted Operators' services. If INDEPENDENT CONTRACTOR's compensation is based on a percentage of gross revenue for a shipment, then, for purposes of computing INDEPENDENT CONTRACTOR's compensation, gross revenue means those monies received by CARRIER from the Shipper or consignee for the transportation of commodities by INDEPENDENT CONTRACTOR on behalf of CARRIER less any direct or indirect cost, expense, or fee causing a reduction in revenue to CARRIER.

(b) *Settlement Period*.  CARRIER shall settle with INDEPENDENT CONTRACTOR with respect to services provided under this Agreement within fifteen (15) calendar days after INDEPENDENT CONTRACTOR's submission, of proper form of those documents necessary for CARRIER to secure payment, including, but not necessarily limited to, the signed freight bill, CARRIER's bill of lading, shipper's bill of lading, delay or irregular operations reports, and properly completed logs as required by DOT.  If INDEPENDENT CONTRACTOR's compensation is based on a percentage of the gross revenue for a shipment, then CARRIER will give INDEPENDENT CONTRACTOR, before or at the time of settlement, a copy of the rated freight bill, subject to CARRIER's right to delete the names of shippers and consignees, and INDEPENDENT CONTRACTOR may examine copies of the CARRIER's tariff relating to the services upon which settlement is based.  If INDEPENDENT CONTRACTOR disagrees with, or disputes any deductions, setoffs, charge backs, or the amount of the settlement check, it must notify CARRIER, in writing within thirty (30) days of receiving said settlement check, setting forth the basis of its disagreement.  The failure to so notify the CARRIER within said thirty (30) day period, shall serve as the INDEPENDENT CONTRACTOR's acceptance of the compensation paid for the loads carried for that settlement period, and INDEPENDENT CONTRACTOR further agrees to forever release and discharge CARRIER from any claim or liability arising out of, or pertaining to, the sum(s) of money paid to the INDEPENDENT CONTRACTOR or deducted from INDEPENDENT CONTRACTOR's settlement check for that period.   CARRIER shall have the right to review all of INDEPENDENT CONTRACTOR's documents and records relating to the use of the Equipment and to the services provided under this Agreement, and INDEPENDENT CONTRACTOR agrees to provide CARRIER with access to such documents and records upon reasonable notice.

(c) *Advances*.  INDEPENDENT CONTRACTOR may request from CARRIER, an advance on earned, but unpaid compensation. CARRIER, in its sole discretion, has the right to grant or deny said request.  In the event CARRIER grants said request for an advance, INDEPENDENT CONTRACTOR agrees to reimburse or pay CARRIER any and all charges/expenses attributable to making said advance. Said payment or reimbursement shall be deducted on INDEPENDENT CONTRACTOR's next settlement.

(d) *Loans for Repairs*.  In the event that CARRIER makes any loans or advances any credit to INDEPENDENT CONTRACTOR for the repair, maintenance, care, or replacement of any Equipment, INDEPENDENT CONTRACTOR hereby agrees to repay such amounts in accordance with the terms and conditions of such loan or advance.  In the event that INDEPENDENT CONTRACTOR fails to repay such loan or advance as agreed, CARRIER is hereby authorize to deduct and withhold any such amounts from any compensation due hereunder.  Nothing contained in this Agreement shall be construed or interpreted to require or obligate CARRIER to make any such loans, advances, or extensions of credit.

(e) *Chargebacks*. CARRIER shall charge back to INDEPENDENT CONTRACTOR at the time of payment or settlement, any expenses CARREER has initially paid that, under this Agreement, the INDEPENDENT CONTRACTOR is obligated to bear.  Such expenses shall be deducted from the amount of INDEPENDENT CONTRACTOR's compensation and shall include, but not be limited to, fuel and mileage taxes, tank washes, product disposal, workman's compensation insurance, occupational disability insurance, cargo claims, property damage, license and permit fees, and any other expenses set forth in this Agreement.  CARRIER will furnish INDEPENDENT CONTRACTOR with a written explanation of how the charge back is computed and, if requested by INDEPENDENT CONTRACTOR, will make the necessary documents available to determine the validity of the charge back.

(f) *Income Withholding Orders/Notices*. In the event that CARRIER is served with any Income Withholding Order for any employees of INDEPENDENT CONTRACTOR or its Contracted Operators, CARRIER shall notify INDEPENDENT CONTRACTOR of its receipt and may notify the applicable government agency or administrative body of the relationship evidenced by this Agreement and that such person is not an employee of CARRIER. Upon receipt of such notice, INDEPENDENT CONTRACTOR hereby agrees to take all actions as are necessary or required by law to comply with such Income Withholding Order. INDEPENDENT CONTRACTOR hereby covenants and agrees to indemnify and hold CARRIER harmless from any and all claims, demands, damages, fines, penalties, costs, expenses, attorneys' fees, and other amounts incurred in connection with any Income Withholding Order relating to an employee of INDEPENDENT CONTRACTOR. In consideration of the CARRIER's agreement hereunder, INDEPENDENT CONTRACTOR hereby waives any claim, demand, action, or cause of action against CARRIER arising, either directly or indirectly, out of CARRIER's action relating to an Income Withholding Order.

6. **Operational and Other Expenses**.

(a) *Payment of Operational Expenses*. INDEPENDENT CONTRACTOR shall, at its sole cost and expense, provide all the Equipment ready to operate and fully roadworthy, including the necessary licenses, permits, cab cards, vehicle identification stamps, and state base plates, and shall furnish all necessary oil, fuel, tires and other parts, supplies and equipment necessary or required for the safe and efficient operation and maintenance of the Equipment, including repairs for the operation of such Equipment; and shall pay all other expenses incident to such operation, including, but not limited to, highway use taxes, weight taxes, state property or indefinite state taxes, fuel taxes, fuel tax surcharges, license, permit and registration fees, ferry charges, toll violations, toll evasion, toll charges, and detention and accessorial charges not collected by CARRIER because of INDEPENDENT CONTRACTOR's failure to provide the required documentation.

(b) *Drivers and Contracted Operators' Expenses*. INDEPENDENT CONTRACTOR agrees to pay all expenses of its drivers and Contracted Operators, helpers, and other employees, including, but no limited to wages, workers compensation insurance or occupational disability insurance, health, welfare and pension costs, and taxes of any kind assessed against the INDEPENDENT CONTRACTOR.

(c) *Empty Mileage Expense*. Unless otherwise required by law, or otherwise agreed between the parties, empty mileage expense, including any expense associated with obtaining the return of empty trailer or other property to the CARRIER'S possession as directed by the Carrier shall be borne by INDEPENDENT CONTRACTOR.

(d) *In-Cab Systems*. INDEPENDENT CONTRACTOR shall be responsible for all costs and expenses required in installing, operating, and maintaining any communications, GPS, email, asset tracking, and other similar trucking technology equipment and systems.

(e) *Equipment Expenses*. INDEPENDENT CONTRACTOR shall be responsible for all costs and expenses required in maintaining, and shall maintain the Equipment in safe condition and in complete compliance with all Motor Carrier Laws and any and all laws and regulations of the states in which INDEPENDENT CONTRACTOR operates.

(f) *Assessed Expenses*. INDEPENDENT CONTRACTOR recognizes that certain of the foregoing expenses, including, but not limited to, fuel and mileage taxes, are initially assessed against CARRIER even though they are the responsibility of the INDEPENDENT CONTRACTOR. Whenever any such expenses are assessed against CARRIER, the INDEPENDENT CONTRACTOR agrees to pay CARRIER fully for these expenses with payment terms specified by CARRIER. INDEPENDENT CONTRACTOR expressly agrees that CARRIER may deduct such expenses from any compensation owed to INDEPENDENT CONTRACTOR.

(g) *Rebates; Discounts*. INDEPENDENT CONTRACTOR hereby acknowledges that CARRIER may from time to time be entitled to discounts, rebates, and/or other incentives in connection with any products, services, plans, or programs to which it may provide access to the INDEPENDENT CONTRACTOR. INDEPENDENT CONTRACTOR hereby agrees that all such discounts, rebates and/or other incentives are the property of the CARRIER and that it has no rights or entitlement thereto. However, nothing contained herein shall prohibit CARRIER, in its sole and absolute discretion and upon such terms and conditions as it may determine, from passing along all or any portion of such discounts, rebates and/or other incentives to INDEPENDENT CONTRACTOR.

(h) *IRP Plate*. INDEPENDENT CONTRACTOR may, if desired at its sole discretion, purchase from CARRIER an International Registration Plan ("IRP") base plate, which plate will be obtained in CARRIER'S name for use by INDEPENDENT CONTRACTOR or its Contracted Operators. The cost of each IRP plate purchased through CARRIER includes the actual plate cost, taxes,

fees, interest and administrative expenses, and shall be deducted from INDEPENDENT CONTRACTOR'S compensation at a rate set forth in Appendix "D" attached hereto until the cost of the IRP plate (as defined above) is paid in full. In the event INDEPENDENT CONTRACTOR chooses to purchase an IRP plate through CARRIER, then INDEPENDENT CONTRACTOR and its Contracted Operators shall be required to return the plate immediately upon the termination of this Agreement, in which case CARRIER shall refund to INDEPENDENT CONTRACTOR a pro-rata share of the amount received by CARRIER in the event that CARRIER is able to reuse the plate or sell the plate to another contractor. INDEPENDENT CONTRACTOR shall not be entitled to reimbursement for the unused portion of a base plate, however, unless CARRIER is able to reuse or sell the plate to another contractor. INDEPENDENT CONTRACTOR is under no obligation to purchase an IRP plate through CARRIER, and may obtain, at its sole cost and expense, an IRP base plate in its own name.

(i) *Fines*. INDEPENDENT CONTRACTOR agrees to pay all fines imposed for violation of any law or regulation by the state in which INDEPENDENT CONTRACTOR operates, the Department of Transportation, or the Interstate Commerce Commission, where such violation results, at least partially, from the acts or omissions of INDEPENDENT CONTRACTOR or its Contracted Operators.

(j) *Chargebacks*. It is further understood that, except as hereinafter set forth, in the event CARRIER pays any of the items set forth in this section, the amount thereof, any attorneys' fees, paid by the CARRIER shall be repaid to CARRIER by way of a charge-back to the INDEPENDENT CONTRACTOR against any funds or compensation owed to INDEPENDENT CONTRACTOR.

(k) *Deductions from Compensation*. INDEPENDENT CONTRACTOR hereby authorizes CARRIER to deduct any and all such costs, expenses, and other charges which it may be required to pay hereunder from any compensation due under the terms of this Agreement.

(l) *Escrow Fund*. The parties agree that the CARRIER shall maintain an escrow fund (the "Escrow Fund") for the INDEPENDENT CONTRACTOR, which escrow Fund shall be governed as follows:

(1) CARRIER shall require the INDEPENDENT CONTRACTOR to maintain an Escrow Fund with the CARRIER, which Escrow Fund shall initially be funded in the base amount of Two Thousand Dollars ($2,000.00) (the "Base Amount"). The Base Amount of the Escrow Fund is for the purpose of settling amounts, which the INDEPENDENT CONTRACTOR may owe the CARRIER under this Agreement at the time of termination. The Escrow Fund shall be funded through the deduction of One Hundred Dollars ($100.00) from each settlement under this Agreement until the Base Amount has been deposited.

(2) While the Escrow Fund is in the control of the CARRIER, the CARRIER shall provide an accounting to the INDEPENDENT CONTRACTOR of any transaction involving the Escrow Fund by clearly describing such transaction in writing to the INDEPENDENT CONTRACTOR at the time of settlement.

(3) An opportunity to utilize the Escrow Fund as a savings account will be permitted once the Base Amount has been reached, which opportunity shall be governed by a separate explanation upon the balance of the Escrow Fund reaching the Base Amount.

(4) The balance in the Escrow Fund shall be repaid upon the prompt return by the INDEPENDENT CONTRACTOR of all signs, licenses, permits, notices, tax cards, fuel cards, operating authority, equipment and other paperwork and property belonging to the CARRIER. Any such reduction shall be accounted for in full in the final accounting period provided by the CARRIER.

(5) Within forty-five (45) days from the termination of the Agreement, the CARRIER shall return to the INDEPENDENT CONTRACTOR all amounts owed to the INDEPENDENT CONTRACTOR by the CARRIER. Final disbursement of such Escrow Fund shall be accompanied by an accounting which the CARRIER shall provide to the INDEPENDENT CONTRACTOR at the time of the settlement, following any transaction involving the Escrow Fund at the time of disbursement of said fund.

(6) The INDEPENDENT CONTRACTOR may make a written request for an accounting at any time, and such accounting shall be provided within seven (7) days from the CARRIER'S receipt of request.

7. **Liability for Damages to Cargo, Etc.** The parties hereby agree as follows:

(a) *Product/Cargo*.  INDEPENDENT CONTRACTOR shall be liable for any cost, expenses or other amounts (including any insurance deductibles charged to or required to be paid by CARRIER) relating to any loss, damage, delay, mis-delivery, or contamination of product or cargo resulting from any incident of loss or damage to such product or cargo, which loss, damage, delay, mis-delivery, or contamination is caused by the negligence, grossly negligence, or intentional act of the INDEPENDENT CONTRACTOR, its agents, employees, representatives, or Contracted Operators. INDEPENDENT CONTRACTOR AGRESS TO INDEMNIFY AND HOLD CARRIER HARMLESS FOR ANY SUCH CLAIM.

(b) *Other Damages/Claims*.  Other than the types of damages/claims addressed in Sections 2(f)(2) and 7(a) of this Agreement, INDEPENDENT CONTRACTOR shall be liable for any cost, expenses or other amounts (including any insurance deductibles charged to or required to be paid by CARRIER) relating to any loss, damage, injury, costs, expenses or amounts incurred by CARREIR or its customers resulting from negligence, grossly negligence, or intentional act of the INDEPENDENT CONTRACTOR, its agents, employees, representatives, or Contracted Operators. INDEPENDENT CONTRACTOR AGRESS TO INDEMNIFY AND HOLD CARRIER HARMLESS FOR ANY SUCH CLAIM.

(c) Nothing contained herein shall in any manner be interpreted or construed to limit or waive any rights of subrogation or contribution that CARRIER or its insurers may have against any third party, including INDEPENDENT CONTRACTOR, its agents, employees, representatives, or Contracted Operators, arising out of any for any incident of loss, damage, or injury.

8.  **Insurance**. The responsibilities and obligations between CARRIER and INDEPENDENT CONTRACTOR involving insurance shall be as follows:

(a) Unless authorized to be self-insured, CARRIER shall maintain public liability, property damage, and cargo insurance in such amounts as are required by the Interstate Commerce Commission, Department of Transportation, and applicable state regulatory agencies and as set forth in Appendix E.

(b) INDEPENDENT CONTRACTOR acknowledges that from time to time, CARRIER may make certain insurance programs, plans, and benefits available to INDEPENDENT CONTRACTOR and/or its drivers and Contracted Operators. In connection with any such programs, plans or benefits, INDEPENDENT CONTRACTOR hereby agrees that it is responsible for the payment of any and all premiums, cost, or other expenses related thereto.  Notwithstanding the foregoing, nothing contained herein shall be construed or interpreted to require CARRIER to provide any insurance programs, plans, and benefits available to INDEPENDENT CONTRACTOR and/or its drivers and Contracted Operators.  INDEPENDENT CONTRACTOR acknowledges and agrees that CARRIER is not a broker, agent, or seller of insurance coverage or benefits, but is merely providing access to such programs, plans, and benefits as an accommodation to INDEPENDENT CONTRACTOR.

(c) INDEPENDENT CONTRACTOR hereby authorizes CARREIR to deduct from its compensation due hereunder any and all premiums and other charges due and owing by INDEPENDENT CONTRACTOR for its insurance coverages required hereunder.  In the event that such compensation is insufficient to pay any premiums or other amounts due and owing by INDEPENDENT CONTRACTOR, INDEPENDENT CONTRACTOR hereby agrees to pay to CARRIER, within three (3) days of demand, any such amounts due and owing.  INDEPENDENT CONTRACTOR acknowledges and agrees that (1) it is its responsibility to maintain all insurance coverages in full force, (2) it is its obligation and responsibility to pay all premiums and other charges due and owing, and (3) the deduction and/or remittance of premiums by CARREIR is merely for convenience and administrative purposes only and is not intended to impose any duty or obligation on CARRIER to pay such amounts or notify INDEPENDENT CONTRACTOR of any non-renewal or cancellation for non-payment.

(d) INDEPENDENT CONTRACTOR acknowledges and agrees that the insurance coverage provided by CARRIER does not and is not intended to protect INDEPENDENT CONTRACTOR whenever the Equipment is not being operated on behalf of CARRIER. As such, in the event that INDEPENDENT CONTRACTOR performs transportation services for any third party other than CARRIER using the Equipment, INDEPENDENT CONTRACTOR agrees (1) to obtain and maintain separate and independent insurance coverages for any such third-party transportation services and (2) to name CARRIER as an additional insured on any such insurance coverages, and (3) to comply in all respects with Section 3(b) relating to removal of CARRIER identification/signage and operation under separate independent authority.

(e) CARRIER shall maintain insurance coverage for the protection of the public pursuant to the Interstate Commerce Commission's regulations under 49 U.S.C. Section 10927.

(f) CARRIER's self-insurance or possession of legally required insurance in no way restricts CARRIER's rights of indemnification from INDEPENDENT CONTRACTOR under any provision of this Agreement.

(g)   CARRIER shall have no insurance responsibilities or obligations pertaining to INDEPENDENT CONTRACTOR other than those expressly stated in this Agreement or mandated by law.

9.   **Cooperation With Carrier On Claims**.  INDEPENDENT CONTRACTOR hereby agrees to cooperate with CARRIER and assist in the notification, processing, investigation, management, and resolution of claims CARRIER, its customer and other third parties as follows:

(a)   *Cargo Claims*. INDEPENDENT CONTRACTOR warrants that all cargo loaded on the Equipment will be delivered to the consignee with reasonable diligence, speed and care and as may be required by the shipper or on the bill of lading. INDEPENDENT CONTRACTOR or its operators will immediately report any cargo exceptions, damages or delay to CARRIER.

(b)   *Accidents*. INDEPENDENT CONTRACTOR or its operator will notify CARRIER immediately of any property damage and any incident or accident involving any pedestrian or occupant of any type of vehicle, whether or not the incident or accident appears to have resulted in personal injury and whether or not INDEPENDENT CONTRACTOR appears to be at fault.

(c)   *Roadside Inspections*. INDEPENDENT CONTRACTOR or its operator will notify CARRIER via telephone or other communications immediately upon completion of any roadside inspection of the Equipment and the results thereof, and INDEPENDENT CONTRACTOR will provide CARRIER with a copy of the roadside inspection report received in connection with each such inspection.

(d)   *Notice of Infractions, Claims, or Suits*. INDEPENDENT CONTRACTOR will forward immediately to CARRIER every demand, notice, summons, ticket or other legal process received by INDEPENDENT CONTRACTOR that involves a charge, infraction, claim, suit or other legal proceeding arising from the operation of the Equipment, the relationship created by this Agreement or the services performed hereunder.

(e)   *INDEPENDENT CONTRACTOR's Assistance and Cooperation*. INDEPENDENT CONTRACTOR and its Contracted Operators will cooperate fully with CARRIER in any legal action, regulatory hearing or other similar process arising from the operation of the Equipment, the relationship created by this Agreement or the services performed by INDEPENDENT CONTRACTOR. INDEPENDENT CONTRACTOR will, upon CARRIER's request, provide written reports or affidavits, attend hearings and trials and assist in securing evidence or obtaining the attendance of witnesses. INDEPENDENT CONTRACTOR will provide CARRIER with any assistance as may be necessary for CARRIER or CARRIER's representatives or insurers to investigate, settle or litigate any accident, claim or potential claim by or against CARRIER.

10.   **Independent Contractor Not An Employee**.  It is expressly and agreed that the INDEPENDENT CONTRACTOR, its drivers, and the drivers of its Contracted Operators are not employees of the CARRIER and are serving as independent contractors for the Equipment and driver services provided pursuant to this Agreement.  INDEPENDENT CONTRACTOR agrees to defend, indemnify and hold CARRIER harmless for any claims, suits, or actions, including reasonable attorney's fees in protecting CARRIER's interests, brought by employees, any union, the public, or state or federal agencies, arising out of the operation of the Equipment pursuant to this Agreement. In this regard, INDEPENDENT CONTRACTOR hereby assures full control and responsibility for all hours scheduled and worked, wages, salaries, workers' compensation and unemployment insurance, state and federal taxes, fringe benefits and all other costs relating to the use of drivers and Contracted Operators and other employees of the INDEPENDENT CONTRACTOR, provided by INDEPENDENT CONTRACTOR pursuant to this Agreement.  Proof of such control and responsibility shall be submitted by INDEPENDENT CONTRACTOR to CARRIER as required by CARRIER and may include, but not be limited to, proof of highway use tax being currently paid when the INDEPENDENT CONTRACTOR purchases the license; proof of income tax being currently paid; proof of payment of payroll tax for INDEPENDENT CONTRACTOR's drivers and a certificate of insurance containing a 30-day notice of change and/or cancellation clause.   As required by law, CARRIER agrees to file information tax returns (Form 1099) on behalf of INDEPENDENT CONTRACTOR if INDEPENDENT CONTRACTOR is paid more than the statutory amount in compensation during a calendar year.

11.   **Confidentiality**.  As part of the business relationship between CARRIER and INDEPENDENT CONTRACTOR, INDEPENDENT CONTRACTOR may be in or come into possession of information or data which constitute trade secrets, know-how, practices, policies, products, processes, sales or customers and other confidential information which is considered proprietary or secret by CARRIER (hereinafter "Confidential Information").   In consideration of the receipt of such Confidential Information and potential business, INDEPENDENT CONTRACTOR hereby agrees that, during the term of this Agreement and for a period of five (5) years thereafter, it will maintain such Confidential Information in the utmost of confidence and will not disclosure such Confidential Information without the prior written consent of CARRIER;  to use such solely in connection with such business relationship; and to take all measures necessary to

protect such Confidential Information. Any breach by a party of any of its obligations under this section would result in irreparable injury to the other party. Such non-breaching party will be entitled (without prejudice to its right to other remedies, including monetary damages, and without the posting of a bond or other security) to injunctive and other equitable relief to prevent or restrain the breach of this section. The obligations of this Section 10 shall survive termination of this Agreement.

12. **Breach**. Notwithstanding anything to the contrary in this Agreement, this Agreement maybe terminated, at any time, by either party in the event of a breach by the other of any term obligation contained in this Agreement In the event of a breach and when practicable, written notice shall be served upon the breaching party, notifying such party of the breach and the termination of the Agreement and reason(s) therefore. If, in CARRIER's judgment, INDEPENDENT CONTRACTOR has subjected CARRIER to liability because of INDEPENDENT CONTRACTOR's acts or omissions, CARRIER may take possession of the lading entrusted to INDEPENDENT CONTRACTOR and complete performance, using the same Equipment or any other equipment. In such event, INDEPENDENT CONTRACTOR shall waive any recourse against CARRIER for such action and INDEPENDENT CONTRACTOR shall reimburse CARRIER for all direct or indirect costs, expenses, or damages including reasonable attorney's fees incurred by CARRIER as a result of CARRIER's possession of the lading and completing performance.

13. **Termination**. Subject to the provisions of Section 4, this Agreement may be terminated for any reason by giving one (1) business day's written notice to that effect to the other party either personally, by mail, or by fax machine at the address or fax number shown at the end of this Agreement. However, the effective date and time of the termination of this Agreement must be either prior to the INDEPENDENT CONTRACTOR picking up a load, or after the INDEPENDENT CONTRACTOR completes delivery of a load (i.e., the effective date and time of termination of this Agreement cannot be when the INDEPENDENT CONTRACTOR is under dispatch with a load).

14. **Indemnification**. Except as otherwise provided, INDEPENDENT CONTRACTOR hereby covenants and agrees to defend, indemnify and hold CARRIER and the Carrier Representatives harmless from any direct, indirect and consequential loss, damage, fine, expenses, including reasonable attorneys' fees as a result of any action, claim for injury to persons, including death, and damage to property which CARRIER may incur arising out of or in connection with INDEPENDENT CONTRACTOR's services, acts, omissions, or obligations under this Agreement.

15. **Purchase of Products, Equipment, or Services from Carrier**. INDEPENDENT CONTRACTOR is not required to purchase or rent any products, Equipment or services from CARRIER as a condition of entering into this Agreement. INDEPENDENT CONTRACTOR is free to purchase fuel solely at its discretion and at truck stops of its choice.

16. **Final Settlement Upon Termination**. With respect to final settlement upon termination of this Agreement, the failure on the part of INDEPENDENT CONTRACTOR to remove all identification devices of CARRIER, and except in the case of identification painted directly on the Equipment, return them to CARRIER in any reasonable manner, shall constitute a breach of this Agreement Such breach, as will any breach, shall entitle CARRIER to withhold any payments owed to INDEPENDENT CONTRACTOR until such obligations are met Upon termination of this Agreement, CARRIER will, within forty-five (45) days after on, return to INDEPENDENT CONTRACTOR, any funds being held to pay expenses incurred prior to termination; however, if INDEPENDENT CONTRACTOR is obligated to pay any sum to CARRIER under such provisions of this Agreement, CARRIER may deduct such obligations from the amounts due to INDEPENDENT CONTRACTOR.

17. **Labor Disputes**. INDEPENDENT CONTRACTOR hereby agrees that should it become involved in a labor dispute with its employees, it will immediately report this fact to CARRIER. If such labor dispute interferes or tends to interfere with the INDEPENDENT' CONTRACTOR's operations for CARRIER, INDEPENDENT CONTRACTOR agrees to continue its operation for CARRIER utilizing other employees not involved in the labor dispute.

18. **Operating Regulations; Company Policies**. In conjunction with this Agreement, CARRIER shall publish regulations which, pursuant to the appropriate governmental body having jurisdiction, INDEPENDENT CONTRACTOR must comply with said regulations are hereby incorporated into this Agreement, and the failure of the INDEPENDENT CONTRACTOR to abide by these regulations may be considered by CARRIER a breach of this Agreement. CARRIER has furnished the INDEPENDENT CONTRACTOR a copy, of any amendments or additions to the regulations to the INDEPENDENT CONTRACTOR. In addition, INDEPENDENT CONTRACTOR hereby agrees to comply, and require its drivers and Contracted Operators to comply, with any and all company policies of the CARRIER applicable to independent contractors, as they now exist or may be amended, modified, revised, renewed, or adopted from time to time.

19. **Equal Contracting Opportunity**: The Services and Equipment specified herein will be furnished by INDEPENDENT CONTRACTOR in full compliance with any and all applicable federal, state, and local laws, statutes, ordinances, rules, and regulations

pertaining to government contracts and subcontracts, including, without limitation, Executive Order 11246.

20. **Benefit**. This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective successors.

21. **Assignment**. CARRIER shall have the right to assign this Agreement at any time without the consent of INDEPENDENT CONTRACTOR. The INDEPENDENT CONTRACTOR shall have no right to assign this Agreement.

22. **Notices**. All notices required or permitted to be given pursuant to this Agreement will be in writing and will be (i) personally delivered, (ii) mailed, first class postage prepaid, or delivered by a nationally recognized express courier service, charges prepaid, (iii) delivered by fax, or (iv) electronic message, if to the Company to the address of CARREIR's registered office (as reflected on the records of the Secretary of State of the State of Texas) and if to INDEPENDENT CONTRACTOR, to the appropriate address set forth on Appendix "A" to this Agreement. Any such notice, when sent in accordance with the provisions of the preceding sentence, will be deemed to have been given and received (a) on the day personally delivered, (b) on the third day following the date mailed, (c) the date of actual delivery by a courier, and (d) the date of delivery and confirmation of delivery by the recipient if delivered by fax or electronic message. Any party may change its address, as set out above, by giving notice in writing to all other parties in the manner set forth in this Section, stating the new address.

23. **Complete Agreement And Construction**. This Agreement, including any Appendices attached, constitutes the sole, entire, and existing agreement between the parties herein, and supersedes all prior agreements and undertakings, oral and written expressed or implied, or practices, between the parties, and expresses all obligations and restrictions imposed on each of the respective parties during its terms, except those specifically modified or changed by mutual written agreement between CARRIER and INDEPENDENT CONTRACTOR.

24. **Governing Law; Venue**. This Agreement, and the application or interpretation thereof, will be governed exclusively by its terms and by the laws of the State of Texas, without regard for the conflict of laws provisions of any other State. INDEPENDENT CONTRACTOR hereby specifically agrees that, for the purposes of this Agreement and the relationship between CARRIER and INDEPENDENT CONTRACTOR, the principal place of business for the INDEPENDENT CONTRACTOR and its employees, agents, and representatives is in the State of Texas. Any action, proceeding, or claim arising out of or relating to this Agreement commenced by any party must be prosecuted in Ellis County, Texas. Each party hereby waives any plea of privilege that might exist in the absence of such party's agreement to prosecute such claim in Ellis County, Texas, and each party hereby irrevocably submits to the non-exclusive jurisdiction of the state and federal courts of the State of Texas and consents to service of process upon such party in any legal proceeding arising out of or in connection with this Agreement.

25. **Severability**. Every provision of this Agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity will not affect the validity of the remainder of this Agreement and the illegal or invalid provision will be enforced to the maximum extent possible to still be legal and valid.

26. **Failure to Pursue Remedies**. The failure of any party to seek redress for violation, or to insist upon the strict performance, of any provision of this Agreement will not prevent a subsequent act, which would have originally constituted a violation, from having the effect of an original violation.

27. **Successors and Assigns**. Each and every covenant, term, provision, and agreement herein contained will be binding upon each of the parties and their respective heirs, legal representatives, successors, and assigns and will inure to the benefit of each of the parties.

28. **Construction, Sections, Appendices, Etc.** Whenever the context requires, the gender of all words used in this Agreement includes the masculine, feminine, and neuter. Each reference to an "Appendix" herein is, unless specifically indicated otherwise, a reference to an appendix attached hereto. It is hereby understood that if any Appendix that is to be executed and delivered pursuant to the terms hereof contains blanks, it will be completed correctly and completely in accordance with the terms and provisions hereof and as contemplated herein prior to or at the time of its execution and delivery. All Appendices are a part of this Agreement and are hereby incorporated herein for all purposes.

29. **Further Assurances**. In connection with this Agreement and the transactions contemplated by it, each party will execute and deliver any additional documents and instruments and perform any additional acts that may be necessary or appropriate to effectuate and perform the provisions of this Agreement and those transactions.

30. <u>Attorneys' Fees</u>. If any party brings any legal action to enforce or interpret the provisions of this Agreement, the prevailing party will be entitled to reasonable attorneys' fees, costs, and expenses, in addition to any other relief to which such party may be entitled.

31. <u>Entire Agreement</u>. This Agreement sets forth the entire Agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings, if any, related thereto.

32. <u>Third-Party Beneficiaries</u>. Except for the Carrier Representatives, there are no third party beneficiaries of this Agreement.

33. <u>Section Headings</u>. The headings in this Agreement are inserted for convenience and identification only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision hereof.

34. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts with the same effect as if the parties had all signed the same document. All counterparts will be construed together and will constitute one instrument. In making proof of this Agreement, it will not be necessary to account for more than one counterpart executed by the person against whom enforcement is sought.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the 23RD day of SEPTEMBER , 201 9 .

<u>CARRIER:</u>

COAL CITY COB CO., INC.


By: _____
Name: DOT LANTRIP
Title: H.R. REPRESENTATIVE

<u>Address for Notices:</u>

4300 I-35E. NORTH
Waxahachie, Texas 75165
Fax: ( 972 ) 923 . 7555

<u>INDEPENDENT CONTRACTOR:</u>

SEQUOIA POWELL GLOBAL TRANSPORT LLC
Company Name

By: _____
Printed Name: JAMES A. POWELL
Title: OWNER

<u>Address for Notices:</u>

547 CLEARLAKE DR.
WAXAHACHIE         TX   75165
Fax: (____) ____-____
Email: spg0c@icloud.com

**APPENDIX "A"**
**EQUIPMENT LIST**

Name:     JAMES A. POWELL
Address:  547 CLEARLAKE DR.
          WAXAHACHIE, TX 75165
Fax No.:
Email:     spgtllc@icloud.com

| Year | Make | Model | VIN |
|------|------|-------|-----|
| 2015 | PETERBILT | 579 | 1XPBDP9X5FD277085 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

APPENDIX "A" - EQUIPMENT LIST – Page 1

APPENDIX "D"
COMPENSATION

| REVENUE ITEMS | INDEPENDENT CONTRACTOR | | CARRIER | |
| --- | --- | --- | --- | --- |
| | Initial | After 1 Year | Initial | After 1 Year |
| Linehaul[1] | 64% | 65% | 36% | 35% |
| Demurrage[2] | 64% | 65% | 36% | 35% |
| Scaling | 64% | 65% | 36% | 35% |
| In-transit Heat | 64% | 65% | 36% | 35% |
| Fuel Surcharge | 100% | 100% | 0% | 0% |
| Scale Tickets | 100% | 100% | 0% | 0% |
| Reimbursed Tolls | 100% | 100% | 0% | 0% |
| Pumping/Blower | 100% | 100% | 0% | 0% |

1.  Exceptions.  The parties agree that the rate of compensation specified herein may be amended for specific shipments, routes or customers, including flat rates for handling products especially in local service.  Any and all exceptions are described on the delivery receipt and likewise become a binding part of the Independent Contractor Agreement In such a case, CARRIER shall provide INDEPENDENT CONTRACTOR with a new rate of compensation prior to the commencement of any trip by the INDEPENDENT CONTRACTOR.  The amended compensation rate will also be included in an addendum to this agreement, to be provided to INDEPENDENT CONTRACTOR prior to the commencement of any shipment. Coal City Cob Company Inc. Affiliate Independent Contractor's compensation rate will be published in the COAL CITY COB COMPANY INC AFFILIATE INDEPENDENT CONTRACTOR AGGREEMENT.

2.  Additional Customer Charges.  INDEPENDENT CONTRACTOR acknowledges and agrees that CARRIER shall be entitled to all revenues or fees for tank rentals, extra hoses, tank washes, insurance surcharges, and environmental surcharges.

[1] Certain loads may contain either an insurance surcharge or tank cleaning charges which have been included into the linehaul revenue. Said insurance surcharge or tank cleaning charge reduces the linehaul revenue allocated to the INDEPENDENT CONTRACTOR on said loads.
[2] CARRIER shall only be obligated to pay this amount to the INDEPENDENT CONTRACTOR when CARRIER has actually received payment for demurrage from the customer.

APPENDIX "D" – COMPENSATION – Page 1

**APPENDIX "E"**
**INSURANCE REQUIREMENTS**

1.   INDEPENDENT CONTRACTOR shall be covered under CARRIER's public liability, property damage and, with regard to common carrier service, cargo loss or damage insurance coverage while INDEPENDENT CONTRACTOR is operating the Equipment on behalf of CARRIER (i.e., while under dispatch by CARRIER). It shall be INDEPENDENT CONTRACTOR's responsibility to provide, at its sole cost and expense, public liability and property damage insurance to protect INDEPENDENT CONTRACTOR whenever the Equipment is not being operated on behalf of CARRIER.

2.   INDEPENDENT CONTRACTOR shall furnish to CARRIER written certificates obtained from its insurance carrier showing that such insurance has been procured, is being properly maintained, that the premiums therefore are paid, specifying the name of the insurance carrier, the policy number, and the expiration date, and further showing that written notice of cancellation or modification of the policy shall be given to CARRIER at least (30) days prior to such cancellation or modification.

3.   INDEPENDENT CONTRACTOR certifies that INDEPENDENT CONTRACTOR has in effect, and will maintain, a policy of workers' compensation or an approved occupational disability insurance policy covering himself and INDEPENDENT CONTRACTOR's employees, agents or servants.  It is INDEPENDENT CONTRACTOR's obligation to carry any fire, theft uninsured motorist and collision insurance that INDEPENDENT CONTRACTOR may desire and, upon CARRIER's request, such insurance shall also name CARRIER as insured thereunder.  INDEPENDENT CONTRACTOR shall comply with any and all insurance requirements (including, without limitation, workers' compensation insurance) as may be required by the State in which his residence or principal place of business is located.

4.   In the event INDEPENDENT CONTRACTOR elects to carry occupational disability insurance instead of workers' compensation insurance pursuant to this Appendix, said occupational disability insurance coverage must be approved in writing by CARRIER.

APPENDIX "E" – INSURANCE REQUIREMENTS – Page 1